UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- X
KIANNA FARRELL,

           Plaintiff,      **DOCKET NO.:**

      -against-

CITY OF ROCHESTER, CITY OF ROCHESTER POLICE
SERGEANT GEOFFREY P. WICHER, in his individual
and official capacities, CITY OF ROCHESTER POLICE
OFFICER DESARAE MALDONADO, in her individual
and official capacities, CITY OF ROCHESTER POLICE
OFFICER CORY ROTH, in his individual and official
capacities, CITY OF ROCHESTER POLICE OFFICER    **COMPLAINT**
SHARYLIZ SOTO, in her individual and official capacities,
CITY OF ROCHESTER POLICE OFFICER BANJAMIN
KIRISITS, in his individual and official capacities, CITY OF
ROCHESTER POLICE OFFICER JACK GAGLIANO, in
his individual and official capacities, CITY OF
ROCHESTER POLICE OFFICER JAREN BARDEEN, in
his individual and official capacities, CITY OF
ROCHESTER POLICE OFFICER BALDONI, in his
individual and official capacities, CITY OF ROCHESTER
POLICE OFFICER JANE/JOHN DOES #1-10, in their    **PLAINTIFF DEMANDS A**
individual and official capacities, and NEW YORK STATE    **TRIAL BY JURY**
TROOPER JANE/JOHN DOES #11-15, in their individual
capacities,

           Defendants.
------------------------------------------------------------------------- X

   Plaintiff KIANNA FARRELL, by her attorneys, HORN WRIGHT, LLP, complaining of

Defendants CITY OF ROCHESTER, CITY OF ROCHESTER POLICE SERGEANT

GEOFFREY P. WICHER, in his individual and official capacities, CITY OF ROCHESTER

POLICE OFFICER DESARAE MALDONADO, in her individual and official capacities, CITY

OF ROCHESTER POLICE OFFICER CORY ROTH, in his individual and official capacities,

CITY OF ROCHESTER POLICE OFFICER SHARYLIZ SOTO, in her individual and official

capacities, CITY OF ROCHESTER POLICE OFFICER BANJAMIN KIRISITS, in his individual

and official capacities, CITY OF ROCHESTER POLICE OFFICER JACK GAGLIANO, in his individual and official capacities, CITY OF ROCHESTER POLICE OFFICER JAREN BARDEEN, in his individual and official capacities, CITY OF ROCHESTER POLICE OFFICER BALDONI, in his individual and official capacities, CITY OF ROCHESTER POLICE OFFICER JANE/JOHN DOES #1-10 , in their individual and official capacities, and NEW YORK STATE TROOPER JANE/JOHN DOES #11-15, in their individual capacities, and alleges as follows:

## PRELIMINARY STATEMENT

1.      This is a civil rights action in which Plaintiff, KIANNA FARRELL seeks relief from CITY OF ROCHESTER, CITY OF ROCHESTER POLICE SERGEANT GEOFFREY P. WICHER, in his individual and official capacities, CITY OF ROCHESTER POLICE OFFICER DESARAE MALDONADO, in her individual and official capacities, CITY OF ROCHESTER POLICE OFFICER CORY ROTH, in his individual and official capacities, CITY OF ROCHESTER POLICE OFFICER SHARYLIZ SOTO, in her individual and official capacities, CITY OF ROCHESTER POLICE OFFICER BANJAMIN KIRISITS, in his individual and official capacities, CITY OF ROCHESTER POLICE OFFICER JACK GAGLIANO, in his individual and official capacities, CITY OF ROCHESTER POLICE OFFICER JAREN BARDEEN, in his individual and official capacities, CITY OF ROCHESTER POLICE OFFICER BALDONI, in his individual and official capacities, CITY OF ROCHESTER POLICE OFFICER JANE/JOHN DOES #1-10 , in their individual and official capacities, and NEW YORK STATE TROOPER JANE/JOHN DOES #11-15, in their individual capacities (hereinafter, collectively referred to as "Defendants") for committing acts under color of law and depriving Plaintiff of rights secured under 42 USC § 1983 grounded in rights secured to her under the Fourth and Fourteenth Amendments to the Constitution of the United States.

2.    Plaintiff alleges that Defendants engaged in unlawful conduct. Specifically, Defendants used excessive force, falsified records and evidence, unlawfully searched, and falsely arrested Plaintiff. All acts were committed under the color of law and deprived Plaintiff of rights secured to her under the Fourth and Fourteenth Amendments of the Constitution of the United States.

3.    Defendants, without justification or any reason except an intent to deprive Plaintiff of her rights and knowledge that their conduct had the tacit authorization of Defendant CITY OF ROCHESTER, assaulted and battered Plaintiff, falsely arrested Plaintiff, and unlawfully searched Plaintiff. Said unlawful acts upon Plaintiff deprived her of her civil and Constitutional rights.

4.    Plaintiff seeks damages, both compensatory and punitive, award of costs, disbursements, interest, attorney's fees, and such other and further relief as this Court deems just and equitable.

## JURISDICTION

5.    This action is brought pursuant to 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution. Jurisdiction is conferred upon this Court by 42 U.S.C. § 1983 and by 28 U.S.C. §§ 1331 and 1343(3) and (4) of the aforementioned Constitutional provisions.

## VENUE

6.    Venue is proper in the Western District of New York pursuant to 28 U.S.C. § 1391(b) since all of the events and omissions giving rise to Plaintiff's claims occurred within the City of Rochester, State of New York; the actual place of employment of the individually named Defendants is within the Western District of New York; and the City of Rochester, State of New York is within the jurisdiction of the Western District of New York. The events surrounding this

lawsuit occurred in the City of Rochester, State of New York, in the Western District of New York. Additionally, Plaintiff, at the time of the incident, resided within the City of Rochester, State of New York in the Western District of New York.

## THE PARTIES

7.    Plaintiff KIANNA FARRELL ("KIANNA" and/or "Plaintiff") is a resident of the United States who, at the time of the incident, lived within the Western District of New York.

8.    Upon information and belief, at all relevant times described herein, Defendant CITY OF ROCHESTER ("CITY") was and continues to be a municipal corporation organized and existing by virtue of the laws of the State of New York.

9.    Upon information and belief, at all relevant times described herein, Defendant CITY, by its agents and/or employees, operated, maintained, and controlled the City of Rochester Police Department ("RPD"), including all supervising officers and police officers thereof. Upon information and belief, at all relevant times described herein, RPD is a subdivision and/or agency of Defendant CITY and has an office at 185 Exchange Blvd., Rochester, New York 14614.

10.    Defendant CITY OF ROCHESTER POLICE SERGEANT GEOFFREY P. WICHER ("WICHER"), upon information and belief, is a sergeant with the RPD who is being sued in his individual and official capacities and is an employee of Defendant CITY and RPD. Upon information and belief, at all relevant times described herein, Defendant WICHER was acting under color of state law within the scope of his employment as a sergeant with RPD.

11.    Defendant CITY OF ROCHESTER POLICE OFFICER DESARAE MALDONADO ("MALDONADO"), upon information and belief, is a police officer with the RPD who is being sued in her individual and official capacities and is an employee of Defendant CITY and RPD. Upon information and belief, at all relevant times described herein, Defendant

MALDONADO was acting under color of state law within the scope of her employment as a police officer with RPD.

12.     Defendant CITY OF ROCHESTER POLICE OFFICER CORY ROTH ("ROTH"), upon information and belief, is a police officer with the RPD who is being sued in his individual and official capacities and is an employee of Defendant CITY and RPD. Upon information and belief, at all relevant times described herein, Defendant ROTH was acting under color of state law within the scope of his employment as a police officer with RPD.

13.     Defendant CITY OF ROCHESTER POLICE OFFICER SHARYLIZ SOTO ("SOTO"), upon information and belief, is a police officer with the RPD who is being sued in her individual and official capacities and is an employee of Defendant CITY and RPD. Upon information and belief, at all relevant times described herein, Defendant SOTO was acting under color of state law within the scope of her employment as a police officer with RPD.

14.     Defendant CITY OF ROCHESTER POLICE OFFICER BANJAMIN KIRISITS ("KIRISITS"), upon information and belief, is a police officer with the RPD who is being sued in his individual and official capacities and is an employee of Defendant CITY and RPD. Upon information and belief, at all relevant times described herein, Defendant KIRISITS was acting under color of state law within the scope of his employment as a police officer with RPD.

15.     Defendant CITY OF ROCHESTER POLICE OFFICER JACK GAGLIANO ("GAGLIANO"), upon information and belief, is a police officer with the RPD who is being sued in his individual and official capacities and is an employee of Defendant CITY and RPD. Upon information and belief, at all relevant times described herein, Defendant GAGLIANO was acting under color of state law within the scope of his employment as a police officer with RPD.

16.    Defendant CITY OF ROCHESTER POLICE OFFICER JAREN BARDEEN ("BARDEEN"), upon information and belief, is a police officer with the RPD who is being sued in his individual and official capacities and is an employee of Defendant CITY and RPD. Upon information and belief, at all relevant times described herein, Defendant BARDEEN was acting under color of state law within the scope of his employment as a police officer with RPD.

17.    Defendant CITY OF ROCHESTER POLICE OFFICER BALDONI ("BALDONI"), upon information and belief, is a police officer with the RPD who is being sued in his individual and official capacities and is an employee of Defendant CITY and RPD. Upon information and belief, at all relevant times described herein, Defendant BALDONI was acting under color of state law within the scope of his employment as a police officer with RPD.

18.    Defendant CITY OF ROCHESTER POLICE OFFICER JANE/JOHN DOES #1-10 ("RPD DOES") are members of RPD who are being sued in their individual and official capacities, are employed by Defendant CITY and RPD and were police officers, detectives, sergeants, or supervisors. Upon information and belief, at all relevant times described herein, RPD DOES were acting under color of state law within the scope of their employment as members of the RPD and employed by Defendant CITY and RPD. Plaintiff does not know the real names and shield numbers of RPD DOES.

19.    Defendant NEW YORK STATE TROOPER JANE/JOHN DOES #11-15 ("DOES #11-15") are members of New York State Police Department who are being sued in their individual capacities, are employed by New York State and New York State Police Department and were police officers, detectives, sergeants, or supervisors. Upon information and belief, at all relevant times described herein, DOES #11-15 were acting under color of state law within the scope of their employment as members of the New York State Police Department and employed by New

York State and New York State Police Department. Plaintiff does not know the real names and shield numbers of DOES #11-15.

## COMPLIANCE WITH NEW YORK GENERAL MUNICIPAL LAW

20.    Plaintiff KIANNA served a Notice of Claim upon CITY on October 30, 2024, within ninety days of the events giving rise to her claims.

21.    Defendant CITY did not notice Plaintiff to sit for a 50-h hearing and, as such, CITY waived its right to conduct a hearing pursuant to Gen. Mun. Law § 50-h.

22.    More than thirty days have elapsed since Plaintiff served her Notice of Claim and CITY has not offered adjustment or payment thereof.

## FACTUAL ALLEGATIONS

23.    Plaintiff KIANNA is a 31-year-old black female and, at the time of the incident, was employed with the United States Attorney's Office.

24.    On or about September 21, 2024, during the nighttime, Plaintiff KIANNA together with her boyfriend Orlando Biggs ("Orlando"), KIANNA's brother Tareek Farrell ("Tereek"), and Tareek's girlfriend Bryonna Marlin ("Bryonna") decided to go to a bar frequented by them located in the Alexander District in the City of Rochester.

25.    KIANNA, Orlando, Tareek, and Bryonna all drove in Plaintiff's 2023 white Honda ("HONDA") to the Alexander District. KIANNA and her group were going to a bar called the Swan Dive ("BAR") located on Alexander Street, Rochester, New York.

26.    KIANNA parked her HONDA in the parking lot to the BAR.

27.    Sometime in the late night of September 21, 2024 and early morning of September 22, 2024, KIANNA, Orlando, Tareek, and Bryonna decided they would leave to go home.

28.     As KIANNA and her group prepared to exit the BAR, several RPD officers arrived and entered the BAR.

29.     Upon information and belief, a shooting had occurred near the BAR.

30.     The RPD officers that arrived at the BAR began to direct all patrons to leave the BAR and began escorting everyone out.

31.     Upon exiting, KIANNA and her group headed directly to the HONDA.

32.     As KIANNA and her group were walking towards the HONDA, Orlando was speaking to either WICHER, MALDONADO, ROTH, SOTO, KIRISITS, GAGLIANO, BARDEEN, BALDONI, RPD DOES, and/or DOES 11-15.

33.     KIANNA was unable to hear the discussion Orlando was having with WICHER, MALDONADO, ROTH, SOTO, KIRISITS, GAGLIANO, BARDEEN, BALDONI, RPD DOES, and/or DOES 11-15.

34     As Orlando neared the HONDA, WICHER, MALDONADO, ROTH, SOTO, KIRISITS, GAGLIANO, BARDEEN, BALDONI, RPD DOES, and/or DOES 11-15 ("Individual Defendants") arrived and began to aggressively surround KIANNA, Orlando, Tareek, and Bryonna.

35.     As the Individual Defendants aggressively surround KIANNA, Orlando, Tareek, and Bryonna, KIANNA became nervous, anxious, and fearful for her and her group's safety.

36.     KIANNA exclaimed "wait, wait" and placed her hands up in the air all the while continuing to exclaim "wait, wait."

37.     KIANNA, without warning and/or any commands or directives being given, was violently thrown to the ground by WICHER, MALDONADO, ROTH, SOTO, KIRISITS, GAGLIANO, BARDEEN, BALDONI, RPD DOES, and/or DOES 11-15 causing KIANNA to fall

backwards, land on her buttocks, and hit her head against the rear driver's side door of the HONDA.

38.     Upon KIANNA being thrown to the ground, WICHER, MALDONADO, ROTH, SOTO, KIRISITS, GAGLIANO, BARDEEN, BALDONI, RPD DOES, and/or DOES 11-15 kneed her and then WICHER, MALDONADO, ROTH, SOTO, KIRISITS, GAGLIANO, BARDEEN, BALDONI, RPD DOES, and/or DOES 11-15 grabbed her by the arms and began to drag her on the parking lot pavement. All the while, KIANNA was asking the Individual Defendants to "wait, wait – I didn't do anything."

39.     The Individual Defendants ignored KIANNA as they continued to assault and drag KIANNA. All the while KIANNA continued to state, "please listen to me . . . I didn't do anything . . . please." The Individual Defendants ignored KIANNA's pleas.

40.     The Individual Defendants, without any lawful basis, threw KIANNA to the ground, dragged her and assaulted her, kneed her, and handcuffed her.

41.     At all relevant times, none of the other Individual Defendants attempted to intervene or protect Plaintiff from the unlawful conduct and demands.

42.     KIANNA had not displayed any weapons, and did not make any threats or move aggressively towards the Individual Defendants. Plaintiff was, at all times, visible to the Individual Defendants.

43.     At all relevant times, Plaintiff did not display any weapons nor threaten use of a weapon nor threaten use of force. Rather, Plaintiff sought at all times to speak to the Individual Defendants.

44.     The Individual Defendants continued to escalate the situation and became more aggressive towards Plaintiff. Despite Plaintiff's protestations, Individual Defendants continued to

assault Plaintiff. The other Individual Defendants, at all relevant times, were aware that there was no legal basis for their actions, but nonetheless allowed the assault upon Plaintiff to continue.

45.    At all relevant times, KIANNA continued to protest against the Individual Defendants' unlawful and illegal conduct.

46.    The Individual Defendants ignored and refused to comply with Plaintiff's pleas.

47.    Ultimately, not less than 8 officers were present as the assault and unlawful seizure of Plaintiff continued unabated.

48.    As a result of the Individual Defendants' use of unlawful force, Plaintiff was caused to suffer severe injuries and extreme severe pain and discomfort.

49.    Individual Defendants had no lawful basis to detain, seize, and/or assault Plaintiff.

50.    KIANNA was not charged with a crime on September 22, 2024.

51.    At all relevant times to the instant Complaint, Individual Defendants were acting under color of law.

52.    At all relevant times to the instant Complaint, Individual Defendants, separately and in concert, engaged in acts or omissions which constituted deprivation of the Constitutional rights, privileges, and immunities of Plaintiff KIANNA and, while these acts were carried out under color of law, they had no justification or excuse in law and were instead gratuitous, illegal, improper, and unrelated to any activity in which law enforcement officers may appropriately and legally engage in the course of protecting persons and property ensuring civil order.

53.    At all relevant times to the instant Complaint, Individual Defendants, and each of them, had the power and duty to restrain the other Defendants and prevent them from violating the law and the rights of Plaintiff KIANNA, but each of the Defendants failed and refused to restrain

the other Defendants and thereby became a party to unlawfully subjecting Plaintiff KIANNA to harm and denial of basic rights.

54. That the injuries Plaintiff suffered were caused solely by the conduct of Defendants and Plaintiff in no way contributed to or caused the injuries she suffered.

55. The conduct of Defendants was the proximate cause of Plaintiff's injuries.

56. The injuries suffered by Plaintiff are permanent in nature.

**AS AND FOR A FIRST COUNT**
**42 U.S.C. § 1983 - Excessive Force**
**(*Against Individual Defendants*)**

57. Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint with the same force and effect as if more fully set forth at length below.

58. Plaintiff was brutalized by Defendants in the absence of any need for such application of force.

59. The Individual Defendantd subjected Plaintiff to excessive force while acting in the scope of their employment as Police Officers. Such force was objectively unreasonable under the circumstances then existing and caused Plaintiff to suffer serious and permanent physical injuries.

60. Plaintiff has suffered significant and substantial damages as a result of all of the aforementioned conduct of Defendants.

61. As a proximate result of Individual Defendant officers' actions, Plaintiff was physically injured, disabled, permanently scarred, caused to be greatly humiliated, injured in her person and reputation, caused to incur attorneys' fees, medical expenses, associated legal expenses, and other special damages, and has suffered great pain and mental anguish, all to Plaintiff's damage in a sum to be provided at trial but not less than ONE MILLION DOLLARS

($1,000,000.00), plus costs, disbursements, and attorney's fees pursuant to Title 42 § 1988, as well as punitive damages as to the Individual Defendants and any other relief this Court may find just and proper.

**AS AND FOR A SECOND COUNT**
**42 U.S.C. § 1983 – False Arrest and Unlawful Search & Seizure**
**(*Against Individual Defendants*)**

61.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint with the same force and effect as if more fully set forth at length below.

62.     That the aforesaid arrest and imprisonment of Plaintiff by Individual Defendants in their capacities as law enforcement was under the color of State Law, without any reasonable cause or belief that Plaintiff was in fact guilty of the crimes for which she was charged.

63.     That said Individual Defendants, their agents, servants, and employees falsely arrested and illegally imprisoned Plaintiff, and intentionally subjected Plaintiff to confinement which Plaintiff was conscious of, and said confinement was not otherwise privileged or consented to by Plaintiff.

64.     That, by reason of the aforesaid false arrest and imprisonment caused willfully and maliciously by Defendants, their agents, servants, or employees, Plaintiff was wrongfully deprived of her rights and privileges and benefits as provided to her under the Constitution of the United States of America, was subjected to pain and suffering, great indignities, ridicule, scorn, loss of freedom, humiliation, mental distress, was prevented from attending her usual activities, was injured in her reputation in the community, and was further caused to incur monetary expense.

65.     That the aforesaid false arrest and imprisonment of Plaintiff violated the Fourth Amendment of the United States Constitution.

66.     That Defendants committed the foregoing acts willfully and with malicious disregard for Plaintiff's rights and are therefore liable to Plaintiff for compensatory as well as punitive damages.

67.     As a proximate result of Defendants' intentional and malicious actions, Plaintiff was greatly humiliated, injured in her reputation, caused to incur attorney's fees, associated legal expenses, and other special damages, and has suffered great mental anguish causing damages, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus costs, disbursements, and attorney's fees pursuant to Title 42 § 1988, as well as punitive damages as to the Individual Defendants, and any other relief this Court may find just and proper.

### AS AND FOR A THIRD COUNT
### 42 U.S.C. § 1983 - Failure to Intervene
### (*Against Individual Defendants*)

68.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint with the same force and effect as if more fully set forth at length below.

69.     Defendants had an affirmative duty to intervene to prevent the violation of Plaintiff's Constitutional rights.

70.     Defendants failed to intervene to protect Plaintiff from the egregious violation of her Constitutional rights, despite having a realistic opportunity to do so.

71.     That, as a result of Defendants' conduct and failure to intervene, Plaintiff's Constitutional rights were violated.

72.     Plaintiff has suffered damages as a result of Defendants' impermissible conduct.

73.     As a proximate result of Defendants' actions, Plaintiff was physically injured, disabled, permanently scarred, caused to be greatly humiliated, injured in her person and reputation, caused to incur medical expenses and other special damages, and has suffered great pain and mental anguish, all to Plaintiff's damage in a sum to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus costs, disbursements, and attorney's fees pursuant to Title 42 § 1988, as well as punitive damages as to the Individual Defendants, and any other relief this Court may find just and proper.

**AS AND FOR A FOURTH COUNT**
***Monell***
***(Against Defendant CITY)***

74.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint herein with the same force and effect as if more fully set forth at length below.

**Failure to Supervise, Discipline and Failure to Train**

75.     Defendant CITY was responsible for supervising, overseeing, and controlling its respective subordinates.

76.     Defendant CITY had an express and/or implied duty to provide a reasonably safe environment for its citizens, including Plaintiff. At a minimum, it had a duty to keep them from being assaulted, falsely arrested, and unlawfully searched by its employees, which was foreseeable based upon past instances of misconduct, which were known to Defendant CITY.

77.     In 2019, Rochester City Council established the Police Accountability Board ("PAB") after a decisive vote by Rochester residents demanding public oversight and accountability within the RPD.

78.     Defendant CITY, upon information and belief, never intended to provide any support and/or authority to the PAB. In point of fact, on information, Defendant CITY from early on sought to interfere with the PAB's investigations and issuing reports.

79.     Between 2020 and 2024, PAB had sustained misconduct claims in 22 incidents and had recommended disciplinary measures in each instance raging from written reprimands to termination.

80.     Defendant CITY never imposed any recommended disciplinary measures recommended by PAB.

81.     On the other hand, RPD's internal investigators only found wrongdoing in 7 percent of the 417 civilian complaints received by RPD between 2016 and 2021.[1]

82.     Upon information and belief, on or about January 2024, Defendant CITY began to pressure the PAB from releasing its reports to the public.

83.     Upon information and belief, Defendant CITY's pressure continued in the fall of 2024. Just prior to PAB issuing its first report, Defendant CITY again sought to prevent the PAB from releasing its report(s).

84.     Defendant CITY had an express and/or implied duty to provide a reasonably safe environment for its citizens, including Plaintiff. At a minimum, it had a duty to assure that its employees did not assault nor wrongfully and falsely arrest Plaintiff, which was foreseeable based upon past instances of misconduct, which were known to Defendant CITY.

85.     Despite having this knowledge, Defendant CITY failed to take any remedial measures to prevent the aforementioned violations of Plaintiff's Constitutional rights.

---

[1] https://policescorecard.org/ny/police-department/rochester#scorecard-at-a-glance

86.    The countenancing of this behavior created an environment within the RPD wherein members were allowed to continue with their behavior, which led to the Constitutional rights of citizens being violated, including Plaintiff.

87.    Defendant CITY intentionally failed to adequately supervise, control, oversee, train, discipline, and/or monitor its employees and members, who had a history of engaging in official misconduct, and failed to implement measures to prevent its employees and members from conspiring with each other to cover up their official misconduct.

88.    Defendant CITY intentionally failed to adequately supervise, control, oversee, train, discipline, and/or monitor its employees and members from conspiring with each other to cover up their official misconduct and prevent them from continuously violating the Constitutional rights of individual citizens, including Plaintiff.

89.    Defendant CITY negligently hired, retained, and/or supervised its employees and members when it knew or should have known that they posed a threat to individuals.

90.    Defendant CITY knew or should have known of its employees and members' propensity for the conduct which caused Plaintiff's injuries, prior to the occurrence of the injuries.

91.    At all times relevant hereto, Defendants' actions were willful, wanton, malicious, reckless, and/or outrageous in their disregard for the rights and safety of Plaintiff.

92.    Defendant CITY was aware that there was a substantial likelihood that permitting its employees and members to carry on their regular duties would deprive the public of their civil rights, but failed to take adequate measures to resolve the wrong.

93.    Defendant CITY's failure and refusal to adequately investigate its employees' actions and discipline its employees, acquiescence in Defendants' conduct, failure to take any remedial action against Defendants, allowing Defendants to remain employed as police officers

detectives, sergeants, and/or supervisors, gross negligence in its supervision of Defendants, and deliberate indifference to the rights of others by failing to act on information that Constitutional rights were being violated, subjects Defendant CITY to supervisory liability for the crime and Constitutional violations perpetrated against Plaintiff.

**Custom, Policy, and Practice**

94.     It was the custom, policy, and practice of Defendant CITY to tolerate, condone, and encourage Constitutional violations, such as those alleged by Plaintiff above, by failing to properly punish, charge, reprimand, and investigate allegations and incidents of misconduct by its employees and members.

95.     Employees and members of CITY, such as the Individual Defendants in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, and that they would receive no reprimand or be punished for their conduct.

96.     Employees of CITY, such as the Individual Defendants in this action, were aware at all times alleged in this Complaint that their unconstitutional conduct would not be investigated or questioned, and that they would receive no reprimand or be punished for their conduct and, further, that they would be indemnified from civil liability regardless of the illegality or unconstitutionality of their actions.

97.     By failing to supervise, train, and reprimand such CITY employees and members of RPD, Defendant CITY caused the injuries to Plaintiff through the actions and inactions of the Individual Defendants.

98.     By maintaining a *de facto* policy of not disciplining, deeming civilian complaints unfounded, preventing PAB from conducting investigations, and allowing automatic

indemnification, Defendant CITY caused the injuries to Plaintiff through the actions and inactions of the Individual Defendants.

99.    It was the custom, policy, and practice of Defendant CITY to blatantly ignore complaints and/or widespread allegations of malfeasance in order to shield the RPD and its officers from receiving any bad press that would be generated from an investigation of police misconduct.

100.    This custom, policy, and practice of Defendant CITY to ignore complaints and/or widespread allegations of assault and other malfeasance created an environment where foreseeable Constitutional violations by its employees and members were rampant, including the violations of Plaintiffs' Constitutional rights.

101.    Defendant CITY's failure to take action against its employees and members involved in this incident and in other similar incidents was part of a custom, practice, and procedure of neglect and deliberate indifference that directly caused the injuries to Plaintiff.

102.    As authorized representatives of Defendant CITY, the employees and members' conduct of illegal arrests or threats of arrest without probable or reasonable cause, searches and seizure of arrestees, and illegal use of force constituted a custom, policy, and practice which renders Defendant CITY liable to Plaintiff as a "Person" acting under the color of state law.

103.    Defendant CITY is, therefore, liable for violations of Plaintiff's Constitutional rights as caused by the Individual Defendants, as described in more detail in the foregoing paragraphs, and Plaintiff has suffered damages therefrom.

104.    Among the other conduct or failure to act by CITY which caused Plaintiff's injuries are the following:

(a) Failure to retrain and update training of its police officers and detectives regarding the proper use of force, probable cause, and investigation of purported crimes under the Constitution

of the United States, including police officers and detectives who have been accused of excessive use of force, improper police procedures and tactics, and falsifying police records.

(b) In hiring and retaining incompetent police officers and detectives who CITY knew or should have known possessed aggressive propensities, lack of proper temperament, and inability to comprehend or abide by Constitutional principles.

(c) In failing to establish and implement meaningful procedures for discipling or re-training officers and detectives who have engaged in such misconduct, including officers and detectives who have been the subject of misconduct claims.

(d) In failing to implement adequate disciplinary policies to deter its police officers and detectives from the use of excessive force, improper police procedures and tactics, and falsifying police records.

105.    That, by virtue of Defendant CITY's failure and refusal to adequately investigate the Individual Defendants' actions, acquiescence in the Individual Defendants' conduct, failure to take any remedial action against the Individual Defendants, allowing the Individual Defendants to remain employed, gross negligence in its supervision of the Individual Defendants, and deliberate indifference to the rights of others by failing to act on information that Constitutional rights were being violated by the Individual Defendants, Defendant CITY, which employed these Individual Defendants and policymakers during the relevant time period, exhibited a *de facto* custom, policy, or usage of unconstitutional conduct sufficient for the imposition of municipal liability under *Monell v. Dept. of Social Services*, 436 U.S. 658 (1978).

106.    Despite knowledge of such *de facto* policies and practices, the supervising and policy making officers and officials of the Police Department of CITY have not taken steps to terminate these policies and practices, have not disciplined individuals who engage in such

practices or otherwise train police officers and detectives with regard to the Constitutional and statutory limits on the exercise of their authority, and have, instead, condoned and ratified these customs, usages, and practices through their deliberate indifference to or disregard of the effect of said policies, customs, and practices upon the Constitutional rights upon persons within their respective jurisdictions.

97.    As a proximate result of CITY's actions, Plaintiff was physically injured, disabled, permanently scarred, caused to be greatly humiliated, injured in her person and reputation, caused to incur medical expenses, associated legal expenses, and other special damages, and has suffered great pain and mental anguish, all to Plaintiff's damage in a sum to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus costs, disbursements, and attorney's fees pursuant to Title 42 § 1988, and any other relief this Court may find just and proper.

### AS AND FOR AN FIFTH COUNT
### Pendant State Claim – Assault and Battery
### *(Against Defendants CITY and RPD Officers)*

98.    Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint with the same force and effect as if more fully set forth at length below.

99.    The aforestated actions of Defendants CITY, WICHER, MALDONADO, ROTH, SOTO, KIRISITS, GAGLIANO, BARDEEN, BALDONI, and RPD DOES amounted to an assault and battery of Plaintiff KIANNA.

100.    Plaintiff KIANNA did not consent to the harmful and/or offensive touching by Defendants.

101.    As a result of the aforementioned actions of Defendants, Plaintiff KIANNA suffered physical and emotional injuries.

102.    Defendants' actions were intentionally, recklessly, and/or negligently done to intimidate and did cause physical pain and emotional distress to Plaintiff KIANNA.

103.    At all times mentioned, WICHER, MALDONADO, ROTH, SOTO, KIRISITS, GAGLIANO, BARDEEN, BALDONI, and RPD DOES (collectively, "RPD Officers") were acting within the scope of their employment as police officers.

104.    At all times mentioned, all police officers and/or employees of CITY were acting within the scope of their employment.

105.    At all times mentioned, the police officers and/or employees were employed by Defendant CITY.

106.    The actions of the officers and employees, which were performed within their scope of employment, creates liability against Defendant CITY under New York State Law.

107.    Consequently, Defendant CITY is liable under *respondeat superior* for the actions of its employees.

108.    As a proximate result of Defendants' intentional and malicious actions, Plaintiff KIANNA was physically injured, disabled, permanently scarred, caused to be greatly humiliated, injured in her person and reputation, caused to incur attorneys' fees, medical expenses, associated legal expenses, and other special damages, and has suffered great pain and mental anguish, all to Plaintiff's damage in a sum to be provided at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), plus costs, disbursements, punitive damages as to the RPD Officers, and any other relief this Court may find just and proper.

## AS AND FOR A SIXTH COUNT
### Pendant State Claim – False Arrest/Imprisonment
### (*Against Defendants CITY and RPD Officers*)

109.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint with the same force and effect as if more fully set forth at length below.

110.     Defendants   CITY   and   RPD   Officers   caused   Plaintiff   to   be   falsely arrested/imprisoned.

111.     Defendants CITY and RPD Officers caused Plaintiff to be confined and intended to have Plaintiff confined.

112.     Plaintiff   was   conscious   of   the   confinement,   Plaintiff   did   not   consent   to   the confinement, and the confinement was not otherwise privileged.

113.     That by reason of the false arrest, Plaintiff suffered damages as set forth herein.

114.     That   by   reason   of   the   foregoing,   Plaintiff   suffered   and   continues   to   suffer irreparable   injury   and   monetary   damages,   in   excess   of   ONE   MILLION   DOLLARS ($1,000,000.00), plus costs, disbursements, punitive damages as to the RPD Officers, and any other relief this Court may find just and proper.

## AS AND FOR A SEVENTH COUNT
### Pendant State Claim – *Respondeat Superior*
### (*Against Defendant CITY*)

115.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in all other paragraphs of the Complaint with the same force and effect as if more fully set forth at length below.

116.     By virtue of RPD Officers' employment with Defendant CITY and their actions within their scope of their employment, Defendants are liable for RPD Officers' actions under a

theory of *respondeat superior*.

117.    As a result of the above-described conduct, Plaintiff was caused to be unlawfully seized, assaulted, battered, falsely arrested and imprisoned, placed in substantial fear for her life, sustained bodily injuries, mental torment, night terrors and nightmares, depression, fear, loss of enjoyment of life, and other physical, mental, and psychological injuries, damage to her reputation, other special damages, has suffered great mental anguish, and has incurred and will continue to incur expenses for medical and psychological treatment, therapy, and counseling, all to Plaintiff's damage, in an amount to be determined at trial but not less than ONE MILLION DOLLARS ($1,000,000.00), as well costs, disbursements, and any other relief this Court may find just and proper.

## JURY DEMAND

118.    Plaintiff demands a Trial by Jury of all causes of action so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment against Defendants as follows:

A.    Under the First Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), as well as costs, disbursements, attorney's fees pursuant to Title 42 § 1988, punitive damages as to the Individual Defendants, and any other relief this Court may find just and proper;

B.    Under the Second Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), as well as costs, disbursements, attorney's fees pursuant to Title 42 § 1988, punitive damages as to the Individual Defendants, and any other relief this Court may find just and proper;

C.    Under the Third Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), as well as costs, disbursements, attorney's fees pursuant to Title 42 § 1988, punitive damages as to the Individual Defendants, and any other relief this Court may find just and proper;

D.    Under the Fourth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), as well as costs, disbursements, attorney's fees pursuant to Title 42 § 1988, and any other relief this Court may find just and proper;

E.    Under the Fifth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), as well as costs, disbursements, punitive damages as to the RPD Officers, and any other relief this Court may find just and proper;

F.    Under the Sixth Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00), as well as costs, disbursements, punitive damages as to the RPD Officers, and any other relief this Court may find just and proper;

G.    Under the Seventh Count, in the amount of ONE MILLION DOLLARS ($1,000,000.00); as well as costs, disbursements, and any other relief this Court may find just and proper; and

H.    Such other and further relief as the Court deems just and proper.

Dated: Garden City, New York
        September 18, 2025

                                    Respectfully submitted,
                                    **HORN WRIGHT, LLP**
                                    *Attorneys for Plaintiff, Kianna Farrell*

                        By:    /s/*Pablo A. Fernandez*
                                    Pablo A. Fernandez
                                    400 Garden City Plaza, Suite 500
                                    Garden City, New York 11530
                                    Tel: 516.355.9696
                                    paf@hornwright.com