UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

KIANNA FARRELL,

Plaintiff,

v.

CITY OF ROCHESTER, CITY OF ROCHESTER POLICE SERGEANT GEOFFREY P. WICHER, *in his individual and official capacities*, CITY OF ROCHESTER POLICE OFFICER DESARAE MALDONADO, *in her individual and official capacities*, CITY OF ROCHESTER POLICE OFFICER CORY ROTH, *in his individual and official capacities*, CITY OF ROCHESTER POLICE OFFICER SHARYLIZ SOTO, *in her individual and official capacities*, CITY OF ROCHESTER POLICE OFFICER BANJAMIN KIRISITS, *in his individual and official capacities*, CITY OF ROCHESTER POLICE OFFICER JACK GAGLIANO, *in his individual and official capacities*, CITY OF ROCHESTER POLICE OFFICER JAREN BARDEEN, *in his individual and official capacities*, CITY OF ROCHESTER POLICE OFFICER BALDONI, *in his individual and official capacities*, JANE/JOHN DOES, *NEW YORK STATE TROOPER #11-15, in their individual capacities*, and JANE/JOHN DOES, *CITY OF ROCHESTER POLICE OFFICER #1-10, in their individual and official capacities*,

Defendants.

---

**DECISION AND ORDER**

6:25-CV-06492 EAW

## INTRODUCTION

Plaintiff Kianna Farrell ("Plaintiff") brings this civil rights action against the City of Rochester, City of Rochester Police Sergeant Geoffrey P. Wicher, City of Rochester Police Officers Desarae Maldonado, Cory Roth, Sharyliz Soto, Banjamin Kirisits, Jack Gagliano, Jaren Bardeen, Officer Baldoni, Jane/John Doe Officers #1-10, and Jane/John Doe New York State Troopers #11-15, alleging all defendants violated her constitutional rights and state laws.[1] (Dkt. 17). All defendants except the Jane/John Doe defendants will be hereinafter referred to as "Moving Defendants."

Pending before the Court is Moving Defendants' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) Plaintiff's unlawful search claim against all individual defendants and excessive force claim asserted against the City of Rochester pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). (Dkt. 20). For the following reasons, the motion is denied.

## BACKGROUND

The following facts are taken from Plaintiff's amended complaint. (Dkt. 17). As required at this stage of the proceeding, the Court treats Plaintiff's well-pleaded allegations as true.

Plaintiff was at a bar one night in Rochester with her boyfriend, her brother, and her brother's girlfriend. (*Id.* at ¶ 24). As Plaintiff and her group prepared to leave the bar,

---

[1] Moving Defendants' counsel did not appear on behalf of the Jane/John Doe City of Rochester Police Officers nor the Jane/John Doe New York State Troopers.

there was a shooting close by and several Rochester Police Department officers entered the building and told the patrons they had to leave. (*Id.* at ¶¶ 28-30). Plaintiff's boyfriend talked with one of the police officers outside the bar. (*Id.* at ¶ 32). Several police officers then surrounded Plaintiff and her group, and a police officer threw Plaintiff to the ground. (*Id.* at ¶¶ 34, 37). Plaintiff was dragged on the parking lot pavement where police officers "assaulted her, kneed her, . . . handcuffed her" and searched her. (*Id.* at ¶¶ 38, 40, 45).

None of the police officers intervened to protect Plaintiff. (*Id.* at ¶ 41). Plaintiff never made threats to the officers, displayed weapons, nor acted aggressively toward the defendants. (*Id.* at ¶ 42). Plaintiff suffered "severe injuries and extreme pain and discomfort." (*Id.* at ¶ 49). Plaintiff was never charged with a crime. (*Id.* at ¶ 51).

Plaintiff initiated this action on September 18, 2025. (Dkt. 1). Moving Defendants moved to dismiss the unlawful search claim and constitutional claims asserted against the City of Rochester pursuant to *Monell*. (Dkt. 15). Upon Moving Defendants' motion, the Court gave Plaintiff the opportunity to file an amended complaint. (Dkt. 16). Plaintiff then filed an amended complaint, asserting claims for excessive force, false arrest, unlawful search, failure to intervene, and *Monell* liability brought pursuant to 42 U.S.C. § 1983, and state-law claims for assault and battery and false arrest against the individual defendants and the City of Rochester. (Dkt. 17). Moving Defendants once again moved to dismiss the unlawful search claim and any constitutional claims asserted against the City of Rochester pursuant to *Monell*. (Dkt. 20). Plaintiff opposed the motion (Dkt. 22) and Moving Defendants filed a reply (Dkt. 23).

## DISCUSSION

### I. Legal Standard

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). This consideration also includes "documents upon which the complaint relies and which are integral to the complaint." *Subaru Distributors Corp. v. Subaru of Am., Inc.*, 425 F.3d 119, 122 (2d Cir. 2005). A court should evaluate the motion by "accepting all factual allegations as true and drawing all reasonable inferences in favor of the plaintiff." *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

### II. Analysis

Moving Defendants only move to dismiss Plaintiff's unlawful search claim against all individual defendants and any constitutional claims asserted against the City of Rochester pursuant to *Monell*. (Dkt. 20). For the following reasons, Moving Defendants' motion is denied.

**A. Unlawful Search**

Plaintiff alleges she was subjected to an unlawful search after unspecified individual defendants detained her. (Dkt. 17 at ¶¶ 44-45).[2] Moving Defendants' argument in favor of dismissal appears to be premised on a typographical error in the amended complaint. (Dkt. 20-1 at 8). This argument is insufficient to justify dismissal of the unlawful search claim, and the Court therefore denies the request.

Plaintiff alleges she was subject to a single search in the course of her detention. (Dkt. 17 at ¶ 45). But the amended complaint alleges, in what appears to be a typographical

---

[2] The amended complaint does not identify any individual defendant as personally involved in the unlawful search. The only nonconclusory factual allegation related to the unlawful search claim states "[Plaintiff] was further searched, detained, and remained in handcuffs for no lawful basis." (Dkt. 17 at ¶ 45). "[I]t is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" *Provost v. City of Newburgh*, 262 F.3d 146, 154 (2d Cir. 2001) (quoting *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). To establish a defendant's personal involvement "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009)).

Moreover, the amended complaint's group pleading appears to fall short of Federal Rule of Civil Procedure 8's pleading standard. Plaintiff generally ascribes all conduct alleged in the amended complaint to the "Individual Defendants," which collectively refers to all eight identified individual defendants and the fifteen Jane/John Doe defendants. (*See* Dkt. 17 at ¶ 34). Case law is clear that "[a] complaint fails to satisfy [Rule 8's] minimum standard '[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct. . . .'" *Scott v. Romano*, 790 F. Supp. 3d 226, 233 (W.D.N.Y. 2025) (quoting *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (2d Cir. 2001)); *see also Ying Li v. City of New York*, 246 F. Supp. 3d 578, 598 (E.D.N.Y. Mar. 31, 2017) ("Pleadings that do not differentiate which defendant was involved in the unlawful conduct are insufficient to state a claim.").

That said, Moving Defendants do not move to dismiss any claims on these grounds, and it is not the Court's job to make arguments for the parties. *See Murphy v. Town of Greece*, No. 6:25-CV-06041 EAW, 2025 WL 3718343, at *13 n.3 (W.D.N.Y. Dec. 23, 2025).

error, that "[Plaintiff] was *further* searched, detained, and remained in handcuffs for no lawful basis." (Dkt. 17 at ¶ 45) (emphasis added). Moving Defendants' argument in favor of dismissal is solely concerned with the word "further" as they construe that allegation to mean that there is a second, unpled unlawful search. Moving Defendants contend that "[Plaintiff] did not describe any other search, so City Defendants are not in a position to defend against a previous search without details. Inasmuch as [Plaintiff] alleges that a search occurred prior to the point in time described in paragraph 45, Defendants request it be dismissed for failure to satisfy notice pleading." (Dkt. 20-1 at 8). Moving Defendants make no further argument and cite no case law in support of their position.

To the extent Moving Defendants seek to dismiss the unlawful search claim based on the typographical error, that request is denied. *See Bd. of Trs. of Ft. Lauderdale Gen. Employees' Ret. Sys. v. Mechel OAO*, 811 F. Supp. 2d 853, 858 n.2 (S.D.N.Y. 2011) (declining to dismiss the complaint on the basis of "an obvious typographical error"), *aff'd sub nom. Frederick v. Mechel OAO*, 475 F. App'x 353 (2d Cir. 2012). But Moving Defendants' motion also seems to argue that any unlawful search claim based on an unpled search conducted before the search alleged at paragraph 45 should be dismissed because the prior unpled search was not included in the amended complaint. This position aligns with the section title of Moving Defendants' memorandum addressing the unlawful search claim, which requests that the Court "dismiss or narrow [Plaintiff's] claim for unlawful search, because she failed to provide notice of a second search." (*Id.*). To that extent, the Court agrees that conduct not alleged in the amended complaint cannot form the basis of an unlawful search claim. But Plaintiff's opposition indicates that the alleged unlawful

search conducted "during the course of Plaintiff's arrest," is the search that forms the basis of her claim. (Dkt. 22 at 9).[3] As Moving Defendants do not apparently request the dismissal of the unlawful search claim based on the search alleged at paragraph 45 in the amended complaint, the Court denies Moving Defendants' motion to dismiss the unlawful search claim.

**B. *Monell* Liability**

Moving Defendants argue that the allegations in the amended complaint in support of Plaintiff's theory of *Monell* liability amount to "naked assertions" incapable of withstanding a Rule 12(b)(6) motion. (Dkt. 20-1 at 13). The Court disagrees. Although Plaintiff's amended complaint includes just about every conclusory and boilerplate phrase in support of *Monell* liability, she makes sufficient factual assertions regarding the City of Rochester's failure to discipline its police officers despite being aware of a pattern of unlawful excessive force for her *Monell* claim to survive a motion to dismiss.[4]

---

[3] Moving Defendants' memorandum in reply does not offer any clarity on their position. Moving Defendants argue the amended complaint does not provide sufficient temporal information to give adequate notice about when the unlawful search occurred, and that the lack of detail will require defense counsel to "scour the available Body Worn Camera videorecordings [sic] looking for a possible search to guide their discovery[.]" (Dkt. 23 at 4). It is unclear whether Moving Defendants' argument in reply refers to the unpled "second search" as addressed in their initial memorandum of law (Dkt. 20-1 at 8), or the search alleged at paragraph 45 of the amended complaint. Either way, Moving Defendants' argument is unavailing. While the Court agrees that the factual allegations in the amended complaint related to the unlawful search claim are sparse, Moving Defendants present no case law supporting their argument that the need to scour body worn camera footage is a sufficient basis for dismissal on a Rule 12(b)(6) motion to dismiss.

[4] As an initial matter, the Court construes the amended complaint to only seek § 1983 liability directly against the City of Rochester on a theory of *Monell* liability on her excessive force claim. Excessive force is the only unlawful conduct identified in the

"[A] municipality can be held liable under Section 1983 if the deprivation of the plaintiff's rights under federal law is caused by a governmental custom, policy, or usage of the municipality." *Jones v. Town of E. Haven*, 691 F.3d 72, 80 (2d Cir. 2012). To establish a municipal policy, practice, or custom, a plaintiff must allege:

> (1) a formal policy endorsed by the municipality; (2) actions taken or decisions made by the municipality's policymakers, which caused the alleged civil rights violation; (3) a practice so widespread that it constitutes "a custom or usage"; or (4) a failure by the municipality's policymakers to properly train or supervise their subordinates.

*Forrest v. County of Greene*, 676 F. Supp. 3d 69, 76 (N.D.N.Y. 2023) (citing *Green v. City of New York*, 465 F.3d 65, 80-82 (2d Cir. 2006), *abrogated on other grounds by Pearson v. Callahan*, 555 U.S. 223, 241 (2009)). "Absent such a custom, policy, or usage, a municipality cannot be held liable on a *respondeat superior* basis for the tort of its employee." *Jones*, 691 F.3d at 80. Furthermore, "[a] plaintiff cannot allege a *Monell* claim where he has not alleged a valid underlying constitutional deprivation." *Lacey v. Yates County*, 30 F. Supp. 3d 213, 228 (W.D.N.Y. 2014) (citing *Johnson v. City of New York*, 551 Fed. App'x 14, 15 (2d Cir. 2014)).

---

*Monell* section of her amended complaint. (*See* Dkt. 17 at ¶¶ 95, 99). Although the amended complaint alleges that the City of Rochester "had a duty to keep [citizens] from being assaulted, falsely arrested, and unlawfully searched by its employees," such a duty is insufficient for liability on a claim brought pursuant to § 1983. *Garrett v. Cummberbatch*, No. 23-CV-2343 (LTS), 2023 WL 3582631, at *3 (S.D.N.Y. May 22, 2023) ("[N]egligence does not amount to a constitutional violation under Section 1983."). Therefore, the Court agrees with Moving Defendants that to the extent Plaintiff seeks municipal liability pursuant to *Monell* on any of her other claims brought under § 1983 (false arrest, unlawful search, and failure to intervene), those claims are dismissed for failure to identify the underlying constitutional violation.

Plaintiff claims that she was subjected to the use of excessive force. (Dkt. 17 at ¶¶ 58-62). She also alleges that the City of Rochester is liable for the alleged unlawful use of force because the municipality "has been deliberately indifferent to the obvious need to supervise and discipline officers who use excessive force against citizens." (*Id.* at ¶ 95).

"Under the failure to supervise or discipline theory, a plaintiff must show that 'the municipality failed to adequately supervise or discipline its employees (thereby implicitly encouraging or ratifying their unlawful conduct) . . . [and] that such a failure of supervision or discipline was tantamount to deliberate indifference.'" *Buari v. City of New York*, 530 F. Supp. 3d 356, 400 (S.D.N.Y. 2021) (quoting *Alwan v. City of New York*, 311 F. Supp. 3d 570, 578 (E.D.N.Y. 2018)). "Deliberate indifference is shown when 'the need for more or better supervision to protect against constitutional violations was obvious." *Id.* (quoting *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995)). Indeed, "the 'persistent failure to discipline subordinates who violate civil rights' . . . can 'give rise to an inference of an unlawful municipal policy of ratification of unconstitutional conduct within the meaning of *Monell*.'" *Lucente v. County of Suffolk*, 980 F.3d 284, 298 (2d Cir. 2020) (quoting *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir. 1983)).

"[A] failure to supervise or discipline claim generally must allege facts demonstrating that other prior incidents put supervisors on notice." *Baumeister v. Erie County*, No. 23-CV-1150-LJV, 2024 WL 4362311, at *9 (W.D.N.Y. Sept. 30, 2024). "For that reason, courts in the Second Circuit routinely dismiss *Monell* claims based on a single

instance of failing to discipline an employee after one alleged unconstitutional event." *Id.* (collecting cases).[5]

Plaintiff broadly alleges that the City of Rochester "negligently hired, retained, and/or supervised its employees and members when it knew or should have known that they posed a threat to individuals," that the City of Rochester "knew or should have known of its employees and members' propensity for the conduct which caused Plaintiff's injuries," and that the City of Rochester "was aware [of] a substantial likelihood that permitting its employees and members to carry on their regular duties would deprive the public of their civil rights[.]" (*Id.* at ¶¶ 105-06, 108). These broad, boilerplate allegations are generally insufficient to support *Monell* liability.

But to bolster her claim that the City of Rochester was aware of an obvious need to protect against constitutional violations, Plaintiff points to statistics involving civilian

[5] In a footnote, Moving Defendants request the Court reconsider its prior conclusion that a plaintiff "need not identify a specific policymaker for municipal liability" on a deliberate indifference theory in support of a *Monell* claim as reasoned in *Dempsey v. City of Rochester*, 761 F. Supp. 3d 607 (W.D.N.Y. 2025) ("*Dempsey* I"). (*See* Dkt. 20-1 at 12 n.4). The City of Rochester filed a motion for reconsideration on that Decision, which the Court denied. *See Dempsey v. City of Rochester*, No. 6:19-CV-06780 EAW, 2025 WL 1132847 (W.D.N.Y. Apr. 16, 2025) ("*Dempsey* II"). The City of Rochester also appealed that Decision but subsequently withdrew its appeal before the Second Circuit Court of Appeals issued a decision. *See Dempsey v. City of Rochester*, No. 26-528, 2026 WL 2606896 (2d Cir. July 20, 2026).

The Court declines to reconsider its prior reasoning. For the same reasons articulated in the initial decision on cross summary judgement motions, *Dempsey* I, 761 F. Supp. 3d at 626 and on the reconsideration motion, *Dempsey* II, at 2025 WL 1132847, at *3-4, the Court concludes on this motion that Plaintiff need not identify a specific policymaker in support of her excessive force claim brought against the City of Rochester pursuant to *Monell* on a theory that the municipality was deliberately indifferent to the need to discipline its police officers using unlawful force.

complaints against the Rochester Police Department or its officers. For example, Plaintiff alleges that between 2016 and 2021, the Rochester Police Department's internal investigators found unspecified "wrongdoing in 7 percent of the 417 civilian complaints."[6] (*Id.* at ¶ 89). She also alleges that the internal organization "responsible for receiving, processing, and investigating complaints made against [Rochester Police Department] members" did not sustain any civilian use of force complaints in the period between 2008 and 2013, and sustained approximately one percent of the 61 use of force complaints lodged in 2019.[7] (*Id.* at ¶¶ 96-97). Plaintiff also cites a New York Civil Liberties Union webpage to allege that from 2012 to 2015, fifteen percent of individuals (501 individuals) identified in Rochester Police Department Subject Resistance Reports were injured. (*Id.* at ¶ 98).

The Court agrees with Moving Defendants that these statistics, standing alone, are insufficient to establish *Monell* liability. *See Fantozzi v. City of New York*, No. 1:21-CV-4439-GHW, 2023 WL 4472305, at *5 (S.D.N.Y. July 11, 2023) ("[S]tatistics about substantiated use of force allegations, decoupled from any assertion of how the NYPD responded to those substantiated cases, cannot speak to (or plausibly allege) any failure to discipline."), *aff'd*, No. 23-1111, 2024 WL 1597745 (2d Cir. Apr. 12, 2024). But Plaintiff also alleges that between 2020 and 2024, a civilian police oversight board sustained 22

---

6 Stated another way, Plaintiff alleges that the Rochester Police Department internal investigators "found wrongdoing" in 29 cases over that period.

7 One percent of 61 is less than one. The Court construes this allegation to claim that the City of Rochester sustained one use of force complaint in 2019.

unspecified "misconduct claims" against the Rochester Police Department and recommended disciplinary measures that were never imposed by the City of Rochester. (Dkt. 17 at ¶¶ 87-88). Although it is unclear whether the misconduct claims substantiated by the civilian police oversight board were expressly related to the use of excessive force, when viewed in a light most favorable to Plaintiff with the other alleged statistics, this allegation raises the inference that the City of Rochester refused to discipline its police officers for excessive force.

Furthermore, Plaintiff alleges that the City of Rochester "has been named as a defendant in at least 40 federal lawsuits alleging use of violent excessive force [within the last decade] by many of the same [Rochester Police Department] officers." (*Id.* at ¶ 99). Although Plaintiff does not provide any case citations to substantiate this claimed number nor identify which police officers are repeatedly the subject of excessive force lawsuits, the Court must accept this alleged number as true for the purpose of this motion. Indeed, a plaintiff "may bolster her [*Monell*] claim by providing 'evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation' into allegations of constitutional violations, such as by citing to similar incidents from other lawsuits or settlements." *Tirado v. City of New York*, No. 19CV10377LAKSN, 2021 WL 11646299, at *10 (S.D.N.Y. Jan. 25, 2021) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119 (2d Cir. 1991), *abrogated on other grounds by Twombley*, 550 U.S. at 562); *see Farrow v. City of Syracuse*, No. 5:12-CV-1401 LEK/ATB, 2014 WL 1311903, at *8 n.7 (N.D.N.Y. Mar. 31, 2014) (observing in dicta that the "15 excessive force complaints . . . filed against the City in the past 5 years" would be sufficient to support *Monell* liability on a motion to

dismiss). While the ultimate resolution of these other alleged lawsuits is unknown, they are sufficient on a motion to dismiss, when considered with the other allegations, to demonstrate that the City of Rochester had notice of a pattern of unlawful use of force performed by its police officers. *See McCants v. City of Newburgh*, No. 14 CV 556 VB, 2014 WL 6645987, at *4 (S.D.N.Y. Nov. 21, 2014) ("[I]t matters not that [seventeen excessive force claims made against the City] only prove a claimant asserted a violation, because they evidence the City was on notice to the possible use of excessive force by its police officers on seventeen different occasions."), *clarified on denial of reconsideration*, No. 14 CV 556 VB, 2014 WL 7398910 (S.D.N.Y. Dec. 9, 2014). In sum, while by no means the strongest claim for *Monell* liability based on a persistent failure to discipline, the Court concludes that the allegations in the amended complaint are sufficient to survive a Rule 12(b)(6) motion. Plaintiff has plausibly pleaded a claim against the City of Rochester for ongoing constitutional violations based on its failure to impose adequate discipline to deter further violations, such that the failure to do so amounted to deliberate indifference.

Moving Defendants have not met their burden on the motion for the Court to conclude otherwise. Moving Defendants' reliance on *Connick v. Thompson*, 563 U.S. 51 (2011) is misplaced. Although the Supreme Court held that "the four reversals [over 10 years] could not have put Connick on notice that the office's *Brady* training was inadequate with respect to the sort of *Brady* violation at issue," *Connick*, 563 U.S. at 62, that case was not decided on a Rule 12(b)(6) motion. Moreover, the 40 excessive force lawsuits alleged here is far greater than the four instances of *Brady* reversals in *Connick*. At this stage of

the proceeding, the allegation that there were 40 lawsuits asserting an excessive force claim against the City of Rochester in the last decade is sufficient to conclude that the City of Rochester had notice of a pattern of this unlawful conduct. That alleged notice, coupled with the allegations that the City of Rochester failed to discipline its officers to deter such misconduct, is sufficient to defeat Defendants' motion. Accordingly, Moving Defendants' motion to dismiss the *Monell* claim is denied.[8]

## CONCLUSION

For the foregoing reasons, Moving Defendants' motion to dismiss (Dkt. 20) is denied.

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated: September 29, 2026
Rochester, New York

[8] As the Court concludes that the amended complaint states an excessive force claim against the City of Rochester based on a failure to discipline theory, it need not address Plaintiff's failure to train or *de facto* policy theories alleged in the amended complaint in support of her *Monell* claim.